UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 15-CR-10156-DJC |
| ) | and |
| SCOT B. LETOURNEAU, ) | Criminal No. 17-CR-10355-DJC |
| Defendant. ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America hereby submits this sentencing memorandum in anticipation of Scot B. Letourneau's ("Defendant") sentencing hearing scheduled for February 27, 2018. On November 20, 2017, Defendant pled guilty to all charges in both above-referenced criminal cases. In criminal case number 15-CR-10156-DJC, the defendant pled guilty to one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1); and one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). There is also a forfeiture allegation in the child pornography case. In criminal case number 17-CR-10355-DJC, the defendant pled guilty to one count of Failure to Register as a sex Offender, in violation of 18 U.S.C. §2250(a) and 42 U.S.C. §16913. *See* Presentence Investigation Report revised February 20, 2018 ("PSR"), ¶¶ 2-4.[1] On the Distribution of Child Pornography conviction, he faces a mandatory minimum sentence of 180 months, which is below the low-end of the advisory guidelines.

Pursuant to Fed. R. Crim. Proc. 11(c)(a)(C), the parties entered into a binding plea agreement in this case. *See* PSR ¶ 5. In the plea agreement, for the child pornography convictions, the parties jointly recommend a sentence of 192 months of imprisonment (i.e., 16 years) on counts one and two of the child pornography case, followed by 5 years of supervised

---

[1] The defendant pled guilty pursuant to a binding plea agreement with a joint recommendation by the parties.

release, a $2,000 fine, restitution to be determined by the Court at sentencing, forfeiture as set forth in the plea agreement, and a $300 mandatory special assessment. This is one year more than the mandatory minimum 15 year sentence. The parties also jointly recommended a 12-month sentence on the Failure to Register as a Sex Offender conviction, to run concurrently with the Distribution of Child Pornography conviction. Additionally, pursuant to the Sex Offender Registration and Notification Act and the laws of the state of Massachusetts, Defendant is required to register as a sex offender and to keep that registration current. The government argues that this jointly recommended sentence is fair, reasonable and comports with the factors outlined in 18 U.S.C. § 3553(a).

I.      U.S.S.G. CALCULATIONS/SENTENCING ENHANCEMENTS

A.      **Legal Framework**

The advisory United States Sentencing Guidelines ("Guidelines") are "the starting point and the initial benchmark" in sentencing. *Gall v. United States,* 552 U.S. 38, 49-50 (2007). The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553(a). *Id*. at 49-50. Because each case is unique, the Court must make a particularized analysis of the nature and circumstances of the offense and the defendant's history and characteristics. 18 U.S.C. § 3553(a)(1). The Court must then impose a sentence that sufficiently reflects the seriousness of the crime, promotes respect for the law, and provides just punishment, and the sentence should adequately deter criminal conduct, protect the public, and provide any necessary education, training or treatment. *See* 18 U.S.C. §§ 3553(a)(2)(A)-(D). After determining the appropriate sentence, the Court should adequately explain its rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Court must also strive to "avoid unwarranted sentencing disparities among

defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

### B. United States Probation's Calculation of Defendant's Total Offense Level and Criminal History Category

Due to the fact that the defendant has previously been convicted of 2 counts of Distribution of Child Pornography, he now faces a minimum mandatory sentence of 180 months and a maximum sentence of 40 years on his conviction for Distribution of Child Pornography.[2] *See* PSR ¶¶ 96, 127. He faces a 10-year mandatory minimum sentence and a statutory maximum sentence of 20 years on his conviction for Possession of Child Pornography. *See* PSR ¶¶ 127. He faces a maximum term of imprisonment of 10 years on the Failure to Register as a Sex Offender conviction. *See* PSR ¶¶ 128. On each of the three convictions, he also faces a 5-year mandatory minimum period of supervised release up to lifetime supervision. *See* PSR, ¶¶ 136-140, and 18 U.S.C. § 3583(k).

The parties have submitted a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C). In it, the parties have calculated the defendant's base offense level (in both cases), specific offense characteristic enhancements for the child pornography case, and grouping relative to both cases. *See* plea agreement at p. 3. The calculations for the child pornography case are as follows as outlined in the plea agreement are as follows: pursuant to U.S.S.G. § 2G2.2(a)(2), defendant's base offense level is 22. The PSR determined that defendant qualifies for five of the sentencing enhancements available under the relevant guideline, U.S.S.G. § 2G2.2(b). *See* PSR, ¶¶ 36-45. Pursuant to U.S.S.G. § 2G2.2(b)(2), a two-level increase applied because the material involved a

---

[2] On page 2 of the plea agreement, the 40 year maximum term of incarceration was inadvertently switched with the lifetime maximum term of supervised release for the Distribution of Child Pornography count. The maximum term of imprisonment is 40 years (and not lifetime), whereas the maximum period of supervised release is life (and not 40 years).

prepubescent minor or a minor who had not attained the age of 12 years; pursuant to U.S.S.G. § 2G2.2(b)(3)(B), a five level increase applied as the material was distributed for the receipt or expectation of receipt, of a thing of value, but not for pecuniary gain; a four-level increase applied as the offense(s) involved material that portrays sadistic or masochistic conduct or other depictions of violence, pursuant to U.S.S.G. 2G2.2(b)(4); pursuant to U.S.S.G. § 2G2.2(b)(6), a two-level increase because the offenses involved the use of computer or an interactive computer service; and, pursuant to U.S.S.G. § 2G2.2(b)(7)(B) and Application Note 6(b)(ii), an additional five-level increase applies because the offense(s) involved 600 or more images.  *See* PSR, ¶¶ 70-75.

In the PSR, U.S. Probation calculated the same base offense level (for both cases), applied the same five sentencing enhancements under U.S.S.G. § 2G2.2(b) for the child pornography case, and applied the same grouping principles.  Additionally, Probation also added a two level increase for obstruction of justice pursuant to USSG §3C1.1, which the parties do not have in the plea agreement.  *See* PSR ¶78.  Per the PSR, the adjusted offense level is 42 before the three level reduction for acceptance of responsibility.  *See* PSR ¶ 79.  With total offense level ("TOL") of 39 and a criminal history category of I, the resulting advisory guideline range would be 262-327 months.  *See* PSR ¶¶ 93, 129.[3]  In the plea agreement, the parties calculated the adjusted offense level to be 40, prior to a three level reduction for acceptance of responsibility.  With a total offense level of 37 and a CHC I, per the plea agreement, the advisory guideline range would be 210-262 months.  Additionally, the parties and Probation both calculated the defendant's offense level for the Failure to Register as a Sex Offender conviction to be 17, prior

---

[3] The initial PSR listed the defendant's CHC to be II.  The government notified the Probation Office that it believed the CHC is I.  Thereafter, Probation confirmed with the parties that the CHC is I which is what is reflected in the final PSR disclosed on February 20, 2018.

to the three level reduction for acceptance of responsibility. *See* p.3 of plea agreement and *see* PSR ¶¶80-85. The government stands by the plea agreement argues for a 182 month sentence and suggests this jointly recommended sentence if fair and reasonable and comports with the factors outlined in 18 U.S.C. § 3553(a).

**II.     THE DEFENDANT MERITS THE REQUESTED SENTENCE**

The defendant's criminal actions again demonstrated that he again pursued his own sexual gratification by exploiting young children. This criminal behavior continued even after he had previously been convicted of Distribution of Child Pornography in New Hampshire state court in 2004. Defendant's viewing of the sexual exploitation of minor children, for his own sexual gratification, is appalling. Numerous courts have emphatically expressed the wretched consequences of child pornography. In *United States v. Goff*, 501 F.3d 250, 258-59 (3rd Cir. 2007), the Court noted:

> Children are exploited, molested, and raped for the prurient pleasure of [the defendant] and others who support suppliers of child pornography. These small victims may rank as 'no one else' in [the defendant's] mind, but they do indeed exist outside his mind. Their injuries and the taking of their innocence are far too real. There is nothing 'casual' or theoretical about the scars they will bear from being abused for [the defendant's] advantage.

Not only do the distribution, receipt, and possession of child pornography devastate individual children, it perversely validates, for consumers of child pornography, the sexual exploitation of increasingly younger children. As such, a significant sentence is warranted.

**A.     The Nature and Circumstances of the Offenses in Both Cases**

**<u>Child Pornography case:</u>**

The government urges the Court to consider the nature and circumstances of the offenses and to recognize the seriousness of his offenses and their effect on the Defendant's victims. *See*

18 U.S.C. § 3553(a)(1). Defendant's proclivity for child pornography that spans back to 2004 is very troubling. He is a repeat sex offender as he has now twice been convicted of distribution of child pornography.

The content of the Defendant's child pornography collection consists primarily of prepubescent boys. As far as the nature of Defendant's child pornography collection, he possessed a combined total of approximately 511 child pornographic images and approximately 103 videos.[4] *See* PSR ¶ 37. The majority were of prepubescent males, some who had not attained the age of 12, some who were engaged in sexual activity with other prepubescent males. The majority of the images were found on the defendant's iPhone and on his Dropbox account. Other images were recovered from the defendant's laptop and on the defendant's thumb drive. The 103 child pornographic videos of minors were all recovered from the defendant's Dropbox account. *See* PSR ¶ 38. Among the images recovered from the defendant's Dropbox account, HSI located three images which depict sadistic and masochistic conduct. *See* PSR ¶ 39.

The defendant also distributed eight child pornographic images to another individual and an additional four images of child pornography were received by the defendant's on-line account during that same period. *See* PSR ¶¶ 26-27. While using the internet to send the eight child pornographic images to another Kik Messenger user, the defendant made statements indicating that he was masturbating, that he was interested in children between 10 and 16 years old, that he thought the boys depicted in the mages that he received were "cut" and "hot," and he encouraged the other user to take pictures the next time that user was with a boy. *See* PSR ¶29. HSI reviewed all images and videos. Relative to the eight child pornographic images the defendant distributed, HSI determined the minors' genitals are the focal point of the images; some of the

---

[4] At sentencing, the government will have representative images or video stills for the Court's review.

children are depicted in unnatural poses considering their ages; and the children depicted are either partially or completely nude. *See* PSR ¶ 30.

Post-arrest, HSI examined the defendant's Kik Messenger chat logs on his iPhone which revealed chats with 69 other users between May 6, 2015, and May 21, 2015. In one of those on-line chats, the defendant stated he had "cleaned his phone' (i.e, deleted). Per HSI, there were no active chats located on the defendant's iPhone prior to May 6, 2015. *See* PSR ¶41.

The evidence also demonstrated the defendant was involved in on-line sharing of images and videos depicting child pornography on Dropbox, a file hosting service. *See* PSR ¶ 31. He traded child pornography with other individuals. Some images he traded using his iPhone, while other child pornography images recovered from his iPhone were located embedded in chats in the defendant's Kik Messenger account. *See* PSR ¶ 37.

In other on-line chats the defendant states he is "into" boys "13ish [and] up." In another, he states that he "love[s] teen boys…maybe 14 but no lower. Hehehe." In yet another, he states that 12 to 16 year olds are his favorite, and he admits that he has pictures of young boys and later states that his ideal age for a boy is between 13 or 14 years old. In a different chat, he states that he had sexual intercourse with a 13-year-old boy whom he was introduced to by a friend**.** *See* PSR ¶¶ 43-50.

Defendant's illicit Internet activity, which focused on child pornographic images and videos of very young female children, was neither a mistake nor an aberration. Rather, even though he was convicted of distribution of child pornography back in 2004 and received a 12 month house of correction sentence, with 6 months to be served and the balance suspended for 3 years, it is clear that this did not deter him from continuing to possess and distribute child pornography. *See* PSR ¶ 96.

**SORNA case:**

Title I of the Adam Walsh Child Protection and Safety Act, enacted on July 27, 2006, is the Sex Offender Registration and Notification Act ("SORNA") which created a new, comprehensive national system for sex offender registration and notification. It includes federal law requirements for sex offenders to register in the jurisdiction where they live, work, or go to school. It also requires that they keep these registrations current. *See* PSR ¶ 52.

On or about July 9, 2004, the defendant was convicted in the state of New Hampshire of Distribution of Child Pornography. Due to that conviction, the defendant is required to register as a sex offender under SORNA. *See* PSR ¶¶ 53, 54. On May 21, 2015, the defendant was arrested by HSI on the above-numbered Distribution of Child Pornography and Possession of Child Pornography charges. *See* case # 15-CR-10156-DJC. On August 10, 2015, after a detention hearing was held on those charges in this District, the defendant was placed on pretrial release conditions which included residing with his sister in Maine, as well as the use of an electronic ankle bracelet. On or about August 13, 2015, the defendant notified in writing, the Commonwealth of Massachusetts, of his address change and relocation to the State of Maine. The defendant was subsequently registered as a sex offender by the State of Maine. On November 3, 2015, relative to the above-outlined District of Massachusetts child pornography case, the defendant cut his electronic ankle bracelet and absconded from pretrial supervision. A warrant issued on that then-pending child pornography case.

The defendant remained a fugitive on the pending child pornography case out of this District for approximately 17 months. Then, on March 29, 2017, he was arrested by the USMS in the District of Colorado, and used a false name of Scot Bailey. The investigation revealed the defendant resided in the District of New Mexico, from on or about November 1, 2015, to on or

8

about July 1, 2016.  During that time, he failed to register as a sex offender in that state, and failed to notify authorities of his residence change as required by law, failed to update his registration and failed to comply with SORNA.  During the time he was an at-large fugitive, his whereabouts were unknown to authorities.

**B.      History And Characteristics Of The Defendant**

The defendant is now 45 years old.  He is a highly educated individual who graduated from Northeastern University with a Bachelor's Degree in Environmental Geology.  In 2012, he obtained his Master's Degree from Harvard Extension School.  *See* PSR p.3 and ¶ 121.  For the most time, he has been employed in a full-time capacity since 2005.  For approximately eight years between 2005 and May, 2015, he was employed as a staff scientist for an engineering company.  He used his work iPhone to send and receive child pornographic images.  *See* PSR ¶¶ 25, 122, 123.  This is an individual who clearly knows right from wrong.  He knowingly and intentionally distributed and possessed child pornography.  While on pretrial release in the instant child pornography case, he knowingly and intentionally cut off his ankle bracelet and fled.  He then remained a fugitive for 17 months and when arrested, was assuming an alias.

Additionally, as the Court is aware, the defendant was first convicted of Distribution of Child Pornography in Cheshire County Superior Court, New Hampshire, back in 2004.  In that case, his custodial sentence was completed on November 6, 2004, and he commenced his three year probationary sentence.  His Probation terminated on November 5, 2007.  *See* PSR ¶ 96.

Per the PSR, the defendant first smoked marijuana at the age of 16 and last smoked marijuana the evening prior to his arrest in March, 2017.  The defendant indicated he would take four to five hits each evening before bed as he felt that it helped him sleep.  In February, 2017, he purchased $100 worth of fentanyl and throughout that month, occasionally smoked it along

with marijuana.  This was the first and last time he has ever used fentanyl.  The defendant also reported that in the 12 months prior to his arrest for the instant offense, he considers marijuana and fentanyl to be his most problematic substances and found himself using more than he intended to once he started using.  *See* PSR ¶¶ 119, 120.

The government recommends the following his incarceration, the Court impose the mandatory minimum five-years of supervised release with special conditions.  Also, *See* PSR, ¶¶ 136-140, and 18 U.S.C. § 3583(k).  This term is reasonable, and will enable him to be monitored by U.S. Probation for a significant period of time following his incarceration.  A lengthy term of supervised release is essential to ensure that Defendant is closely monitored, completes a certified sex offender program selected by U.S. Probation, mental health evaluation and counseling as deemed appropriate by U.S. Probation, and that his computer use is restricted and monitored.  Additionally, this will enable U.S. Probation to assist the Defendant first with his re-integration back into society and further assist him with obtaining and maintaining gainful employment.

**C.     The Requested Sentence Is Needed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses and Afford Specific and General Deterrence**

The seriousness of these convictions cannot be underscored.  In examining the seriousness of the offenses, the Court must review the harm to the victims.  *See United States v. Cunningham*, 680 F.Supp 2d, 844, 855 (N.D. Ohio, Jan. 26, 2010).  The impact the Defendant's egregious actions have had on at least one of the minor children depicted in the Defendant's child pornography collection, namely, John Doe IV, is profound.[5]  Two images of John Doe IV

---

[5] To protect his identity, that minor victim is referred to as "John Doe IV."  The defendant has been provided with his true name.

were located in the defendant's collection of child pornography.  In short, it has caused him and his family an inordinate amount of pain.  The devastating impact the knowledge that images of John Doe IV being sexually abused are being circulated over the internet, is best summed up by the impact statement submitted by John Doe IV's mother when she wrote:

> "…At a bare minimum, the defendant should compensate my son(s) for taking advantage of their abuse, as well as keeping these horrendous photographs alive and actively traded on this seemingly indestructible network of child pornography…
> With people such as this defendant, actively seeking, purchasing, collecting, trading, and gratifying themselves with these horrific depictions of child rape, memories of these events are kept alive and nourished by his vile sickness of human spirit.  A victimless crime?  Hardly…
> People may think, that the only victim of child pornography is the child himself and that the viewing of the pornography is remote in time, distance, and proximity from the child rapes themselves.  My entire family is a victim of this child pornography.  Our children are certainly impacted by the knowledge that other people are enjoying themselves with pictures of our children's rape and torment… [e]very time our family learns of another case our hearts sink once more.  Will the torment ever end?"[6]

Defendant has negatively affected the lives of children through his contributions to the market of child exploitation.  The requested sentence is "sufficient, but not greater than necessary," to accomplish these goals.  *See* 18 U.S.C. § 3553(a).  Imposing serious penalties on those who seek, view, trade and save child pornography serves the interest of the minor victims depicted in these images and videos.

Possession of child pornographic images is not a victimless crime.  On the contrary, many young children have been victimized and continue to be victimized because of the desires of people like this Defendant.  In *United States v. Dyer*, the First Circuit reiterated that "child pornography victimizes children not only at the time of actual abuse but each time the image is accessed and distributed anew."  589 F.3d at 526-27 (1st Cir. 2009).  Defendant's distribution and possession of child pornography unequivocally contributed to the continuing trauma experienced

---

[6] A redacted copy of the impact statement of John Doe IV's mother has been provided to U.S. Probation and defense counsel and US Probation has confirmed that a copy has also been provided to the Court.

by the abused children depicted in his collection. These children often live with the knowledge that there are numerous, unknown individuals in the world who are sexually gratifying themselves with pictures of the worst moments of the children's lives, and that such exploitation will continue indefinitely. *See United States v. Blinkinsop,* 606 F.3d 1110, 1118 (9th Cir. 2010).

A sentence of 192 months will appropriately serve as both a specific deterrent to this recidivist defendant as well as a general deterrent to future conduct involving the exploitation of children. *See* 18 U.S.C. § 3553(a)(2)(B). Should the Court impose the joint recommendation of 16 years, the defendant will be close to age 60 when he is released from his incarcerative sentence. "[S]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced." *See United States v. Goldberg* 491 F.3d at 672.

Additionally, imposing serious penalties on individuals who fuel this market may deter other individuals from joining in its ranks. Defendant has exploited children while hidden behind a computer screen. These child victims are not abstractions or objects—they are real people who experienced sexual abuse or sexual exploitation for these pictures or images to be produced. A significant term of imprisonment reinforces, to the Defendant and to others who are tempted to follow in his footsteps, that these crimes are exceedingly grave in nature, thereby promoting respect for the law and to protect the safety of the public, and in particular, children, who are the most vulnerable victims in society.

**III.     RESTITUTION**

Here, only one victim, John Doe IV, is seeking restitution in this case and he has suffered substantial losses as a result of the dissemination of his images. Per HSI, John Doe IV is depicted on two of the child pornographic images possessed by the defendant. The victim seeks restitution in the amount of $15,000. A civil attorney representing John Doe IV provided the government with supporting materials, including the restitution request, a psychological evaluation and damages assessment for John Doe IV, a mental health life care plan concerning the damages caused by the chronic and severe sexual abuse to which John Doe IV was subjected to as well as for the dissemination of pictures of the abuse on the Internet, and an impact statement submitted by John Doe IV's mother. Those documents have been provided to counsel for the defendant and Probation. Probation has also provided a copy of same to the Court at the same time it disclosed the final PSR in this case. In the plea agreement, the parties agree that restitution is to be determined by the Court at sentencing. *See* plea agreement at p. 4. The government requests the Court order restitution in the amount of $15,000 to John Doe IV.

Restitution in these cases is mandatory pursuant to 18 USC § 2259(a), (b). In 18 USC §2259(b)(1), Congress defined the losses for which victims are entitled to receive restitution as follows:

(3) Definition – for purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for –

(A) medical services related to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

*See* 18 USC §2259(b)(3).

In *Paroline v. United States*, 134 S. Ct. 1710 (2014), the United States Supreme Court held that every convicted consumer and distributor of child pornography should contribute to the recovery of his or her victims. The court expressed the devastating nature of the harm suffered by all those who are the subjects of circulated child pornography images. It held that injury and damage are foreseeable consequences of this crime, that restitution should be ordered and that it should not be a "token or nominal amount.' *Id.* at 1727.

The Court found that a district court "should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 1727. It said further that this "cannot be a precise mathematical inquiry," but instead "involves the use of discretion and sound judgment" by the district court. *Id.* at 1728. The Supreme Court has recognized as long ago as 1982 in New York v. Ferber, 458 U.S. 747, 758-60 (1982), that the harms from child pornography crimes devastate victims over their entire lifetime.

The government recognizes the enormous difficulty facing the Court with regard to determining an appropriate amount of restitution for the one victim seeking restitution in this case. It is clear from the submissions made on behalf of John Doe IV that he suffered tremendously as a result of the criminal acts of the defendant. The United States respectfully requests that this Honorable Court award restitution in the amount requested by John Doe IV.

**IV.   CONCLUSION**

For the above reasons, the government argues that a sentence of 192 months of imprisonment, five years of supervised release with standard and special conditions, forfeiture, $15,000 restitution to John Doe IV, and a $300 mandatory special assessment, are substantively

reasonable, and sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

                    Respectfully submitted,

                    ANDREW E. LELLING
                    United States Attorney

          By:    */s/ Suzanne Sullivan Jacobus*
                    Suzanne Sullivan Jacobus
                    Assistant U.S. Attorney

Dated: February 20, 2018

## CERTIFICATE OF SERVICE

    I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and thereby served an electronic copy on counsel for the defendant.

                    */s/ Suzanne Sullivan Jacobus*
                    Suzanne Sullivan Jacobus
                    Assistant U.S. Attorney